

State of Tennessee

**Department of State**

Division of Business Services
312 Rosa L Parks Ave
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

<u>11/22/2010</u>
Date

70090960000115327842
Certified Number

File No:    <u>28536</u>

Company:    **HIGHWAY GAMES, LLC**

Name:

Agent/POE:    R/A CORPORATION SERVICE CO

Address:    1201 HAYS ST
TALLAHASSEE, FL 32301-2525

Country:

RE:    PHONEUS, LLC

VS:    HIGHWAY GAMES, LLC

### Notice of Service

The enclosed summons and attachments are hereby officially served upon you by the Office of the Tennessee Secretary of State pursuant to Tennessee Law. Please refer to the summons and attachments for details concerning the lawsuit filed against you. If you have any questions, please contact the clerk of the court which issued the summons. You can obtain the court's telephone number by calling information (area code) 555-1212. The name of the court and county where the court is located will be on the attached summons.

The summons will either tell you a court date and time at which you must appear to defend yourself or tell you the number of days from the day you are served within which you must file an answer upon the plaintiff's attorney. Failure to appear in court at the time specified or failure to answer the summons within the given time could result in a judgement by default being rendered against you for relief sought in the lawsuit.

The Secretary of State's Office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Sincerely,

*Tre Hargett*

Tre Hargett
Secretary of State

enclosures
Initial:    MMH
CC:

SS-4214 (Rev. 3/97)                                                RDA 1003

Exhibit A



SUMMONS

STATE OF TENNESSEE

## IN THE CHANCERY COURT FOR BEDFORD COUNTY, TENNESSEE
## AT SHELBYVILLE

PHONEUS, LLC,

    Plaintiff,

*SUMMONS*

vs.

    Civil Action No. $\mathcal{2}8536$

HIGHWAY GAMES, LLC,

    Defendant.

To the above named Defendant:

    **Highway Games, LLC**
    1015 Haines Street
    Jacksonville, FL  32206

    ## SERVE REGISTERED AGENT:
    **CORPORATION SERVICE COMPANY**
    **1201 Hays Street**
    **Tallahassee, FL  32301-2525**

You are hereby summoned and required to serve upon **Hon. Mark J. Patterson** and **Hon. John H. Norton, III,** Petitioner's attorneys, whose addresses are noted in the Complaint, an Answer to the Petition, which is herewith served upon you, within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail so to do, Judgment by Default will be taken against you for the relief demanded in the Complaint.

    **WITNESS,** Curt m. Cobb , Clerk of said Court, at office this _12th_ day of November 2010.

State of Tennessee, Bedford County
I certify this is a true copy of the
original Summons
filed in the case.
This 11-12-10
Curt M. Cobb, Clerk & Master

    BY: _Cynthia Wilson_
    As Deputy Clerk

(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.)

## RETURN OF SERVICE

Came to hand same day issued and served on the ____ day of _____, 20__, by

delivering a copy of this summons and a copy of the complaint to _____

_____

_____

      I hereby accept service of the within summons and complaint and waive

the formal service of same.

Date: _____         _____

No. _____

STATE OF TENNESSEE

PHONEUS, LLC,

vs.

HIGHWAY GAMES, LLC

SUMMONS IN A CIVIL ACTION

Issued this the ____ day of ____ 2010.

CLERK and MASTER

DEPUTY CLERK

## NOTICE TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**ORIGINAL**

### IN THE CHANCERY COURT FOR BEDFORD COUNTY, TENNESSEE
### 17th JUDICIAL DISTRICT

| | | |
|---|---|---|
| PHONEUS, LLC, | ) | |
| Plaintiff, | ) | Case No. 28536 |
| | ) | |
| vs. | ) | Chancellor J.B. Cox |
| | ) | |
| Highway Games, LLC, | ) | FILED 11-12-10 |
| Defendant. | ) | 2:46 O'clock ___ m |

State of Tennessee, Bedford County
I certify this is a true copy of the original *[signature]* filed in the case.
This 11-12-10
Curt M. Cobb, Clerk & Master

Curt M. Cobb—C & M
By *Cynthia Wilson*

## COMPLAINT

1.     PHONEUS, LLC ("PHONEUS"), is a limited liability company, organized under the laws of the state of Tennessee, with its principal place of business at 104 Anthony Lane, Shelbyville, Tennessee 37162.

2.     Defendant, Highway Games, LLC ("Highway Games"), is a limited liability company, organized under the laws of the state of Florida, with its principal address at 1015 Haines St., Jacksonville, Florida 32206. Highway Games has appointed Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525 as its registered agent, and it may be served at this address.

3.     This Court has jurisdiction over this action under the provisions of T.C.A. §§ 16-11-102 – 103 and because Highway Games has consented to the jurisdiction of this Court over the matters alleged herein.

4.     Venue is proper in this judicial district under T.C.A. § 16-11-114(3) and because Highway Games has agreed to submit itself to venue in this judicial district for disputes arising from the matters alleged herein.

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

1

5. On or about April 30, 2009, PHONEUS and Highway Games entered into an Area Distribution Agreement ("ADA"). A true copy of the ADA is attached hereto as Exhibit 1.

6. At all times relevant to the acts and omissions alleged herein, the ADA was binding on and enforceable against Highway Games.

7. Highway Games has breached the ADA by failing to exert its best efforts to promote and to enhance the development of PHONEUS vending machines, as it is obligated to do under Section 3.C.(3) of the ADA, including by failing to notify PHONEUS of infringing machines being used in the licensed territory and by transferring location rights to a competing business.

8. Highway Games has breached the ADA by engaging in other business activities that conflict with Highway Games' obligations under the ADA, including by operating competitive machines, in violation of Section 8 of the ADA.

9. Highway Games has breached the ADA by failing to pay certification fees and costs billed to it under Section 3.C.(1) of the ADA.

10. Highway Games has breached the ADA by failing to insure that PHONEUS machines placed by it were operated in accordance with PHONEUS Rules and Regulations, as required by Section 3.C.(4) of the ADA.

11. Highway Games has breached the ADA by failing to comply with the ADA on three or more occasions during a consecutive twelve month period, in violation of Section 9.A.(f) of the ADA.

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

2

12.     By notice delivered to Highway Games on or about November 11, 2010, PHONEUS has properly and lawfully terminated the ADA, pursuant to Section 9 thereof.

13.     Highway Games has and is violating Section 10.B. of the ADA by having an interest in the distribution of collector card vending machines that were not supplied by PHONEUS.

14.     The pre-termination breaches of the ADA by Highway Games have caused compensable injury to PHONEUS, in amount not yet determined.

15.     The post-termination violations of Section 10.B. of the ADA by Highway Games are causing and will continue to cause irreparable harm to PHONEUS, as well as compensable injury to PHONEUS, in an amount not yet determined.

**WHEREFORE,** PHONEUS demands judgment against Highway Games, as follows:

a.     For an injunction preventing Highway Games from manufacturing or distributing collector card vending machines, or from participating in any capacity in such manufacturing or distribution, for a period of five (5) years from the date of termination of the ADA;

b.     For an award of damages, profits, and exemplary damages caused by and arising from Highway Games' breach of contract and unlawful conduct;

c.     For an award of costs incurred by PHONEUS in bringing this action; and

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

3

d.    For such other and further relief as this Court may consider just and proper.

Respectfully submitted,

**WADDEY & PATTERSON, P.C.**

By: Hon. Mark J. Patterson *by Hon E. w/ permission*

Hon. Mark J. Patterson
BPR No. 7186
1600 Division St., Suite 500
Nashville, TN 37203
(615) 242-2400

**THE NORTON LAW FIRM, P.C.**

By

Hon. John H. Norton, III
BPR No. 5069
Post Office Box 37
Shelbyville, Tennessee 37162
(931) 684-4824

*Attorneys for Plaintiff*

THE NORTON
LAW FIRM, P.C.
ONE ON THE SQUARE
124 EAST SIDE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TN 37162

4

State of Tennessee, Bedford County
I certify this is a true copy of the
original *Distribution Agreement*
filed in the case.
This  11-12-10
Curt M. Cobb, Clerk & Master

FEC CTD CO. CHANCERY CT.

2010 NOV 12  PH 2: 47

CURT M. COBB, C.&...

BY: *Cynthia Wilson*

## AREA DISTRIBUTION AGREEMENT

This Area Distribution Agreement ("Agreement") is entered into this 30th day of April 2009, by and between, phoneUS® LLC, a Tennessee, limited liability company with its principal office at 104 Anthony Lane, Shelbyville, Tennessee 37160 ("COMPANY") and Highway Games LLC, a Florida corporation with its principal office at 1015 Haines Street, Jacksonville, Florida 32206 ("DISTRIBUTOR").

Distributor has requested and Company has approved to terminate the prior Area Distribution agreement (ADA) and enter solely into this new ADA subject to the following.

### 1. RECITALS

Under a non-exclusive license to U.S. Patent number 6,213,874, ("the '874 Patent"), the COMPANY manufactures and distributes vending machines that dispense collector cards, including without limitation, sports cards, prepaid debit, post, lottery and phone-style cards. The COMPANY'S vending machines incorporate a "no purchase necessary" video game that promotes the sale of the collector cards. And may offer a second tear promotional contest to further enhance the sale of the card. The COMPANY'S vending machines are designed and distributed under certain trademarks, service marks, logos and other commercial symbols, including, without limitation, "phoneUS®"™, "PHONEUS" ™, (collectively the "Marks") which are licensed to the COMPANY. The COMPANY'S vending machines are also designed and distributed pursuant to certain confidential information and trade secrets owned by the COMPANY. The COMPANY'S vending machines are operated with uniform formats, designs, systems, methods, specifications, standards, and procedures, all of which may be improved, further developed or otherwise modified from time to time by the COMPANY.

The COMPANY grants to persons who meet the COMPANY'S qualifications and who are willing to undertake the investment and effort, the right to purchase, distribute and operate the COMPANY'S vending machines, and purchase and distribute the COMPANY'S collector cards within a defined geographical area.

DISTRIBUTOR acknowledges that DISTRIBUTOR has read this Agreement and understands and accepts the terms, conditions and covenants contained in this Agreement as being reasonably necessary to maintain the COMPANY'S high standards of quality and service and the uniformity of those standards at all locations operating the COMPANY'S vending machines in order to protect and preserve the goodwill associated with the COMPANY and its Marks.

DISTRIBUTOR acknowledges that DISTRIBUTOR has conducted an independent investigation of the business contemplated by this Agreement and recognizes that, like any other business, the nature of the business conducted by COMPANY may evolve and change over time, that an investment in vending machines and collector cards involves business risks and that the success of the venture is largely dependent upon the business abilities and efforts of DISTRIBUTOR. DISTRIBUTOR agrees to fully disclose any and all findings from such an investigation.

The COMPANY disclaims the making of, and DISTRIBUTOR acknowledges that DISTRIBUTOR has not received or relied upon, any warranty or guaranty, express or implied, as to the revenues, profits or success of the business venture contemplated by this Agreement. DISTRIBUTOR acknowledges that DISTRIBUTOR has not received or relied on any representations about the distributorship by the COMPANY, or its officers, directors, employees or agents, and further represents to the COMPANY, as an inducement to its entry into this Agreement, that DISTRIBUTOR has made no misrepresentations to the COMPANY in DISTRIBUTOR's application for the distribution rights granted hereunder.

## 2. DEFINITIONS

### A. EXCLUSIVE AREA

"Exclusive Area" shall mean the geographic area described in Exhibit A, attached hereto and made a part of this Agreement.

### B. CONTROL PERSON

"Control Person" shall mean the person(s) identified on Exhibit B who: (a) is employed, authorized, and empowered by DISTRIBUTOR to manage the business operations of DISTRIBUTOR related to DISTRIBUTOR'S rights and obligations under this Agreement; and (b) is employed and authorized by DISTRIBUTOR to communicate with COMPANY on all matters pertaining to this Agreement.

## 3. DISTRIBUTION RIGHTS AND OBLIGATIONS

### A. TERM OF AGREEMENT, RENEWAL, AND RESERVATION OF RIGHTS

Subject to the provisions contained herein, this Agreement shall be for an initial Term commencing and expiring on the respective Commencement and Expiration dates set forth in Exhibit B, attached hereto and made a part of this Agreement.

If DISTRIBUTOR is in compliance with all obligations, terms and conditions of this Agreement, DISTRIBUTOR may renew this Agreement for additional successive two (2) year Terms by: (a) providing written notice to COMPANY at least thirty (30) days prior to the Expiration Date of the initial and any successive Term; and (b) paying a renewal fee to COMPANY in the amount of five-hundred thousand dollars ($500,000.00) on or before the Expiration Date of the initial and any successive Term.

The COMPANY (on behalf of itself and its affiliates) retains the right, in its sole discretion and without granting any rights to DISTRIBUTOR: (a) to distribute, or to grant other persons the right to distribute, vending machines and collector cards at such locations outside the Exclusive Area and on such terms and conditions as the COMPANY deems appropriate; and (b) to sell within and outside the Exclusive Area any and all products and services developed by the COMPANY under the Marks or other trademarks, service marks and commercial symbols through dissimilar channels of distribution and pursuant to such terms and conditions as the COMPANY deems appropriate.

2

DISTRIBUTOR understands and acknowledges that COMPANY owns rights under the '874 Patent that are non-exclusive and therefore is not granting to DISTRIBUTOR an exclusive right under the '874 Patent to distribute or operate collector card vending machines in the Exclusive Area.

## B. RIGHTS DURING TERM

Provided DISTRIBUTOR: (i) is in full compliance with the terms and conditions contained in this Agreement, including, without limitation, the obligations contained in Paragraph C of this Section 3; and, subject to Paragraph D of this Section 3: (1) grants to DISTRIBUTOR a distributorship for the purchase and distribution of the COMPANY'S vending machines and collector cards during the Term and within the Exclusive Area and (2) grants to DISTRIBUTOR the right under the '874 Patent to operate COMPANY'S vending machines during the Term at locations within the Exclusive Area.

During the Term, DISTRIBUTOR shall have the exclusive right to distribute COMPANY'S vending machines to approved locations in the Exclusive Area, except as otherwise provided herein.

Subject to the COMPANY'S right of approval in Section 3.C.(8) of this Agreement, DISTRIBUTOR may distribute and operate COMPANY'S vending machines in truck stops, convenience stores, tobacco stores, and other similar locations.

DISTRIBUTOR shall have the right to purchase COMPANY vending machines that incorporate improvements and upgrades to COMPANY'S existing phoneUS® collector card vending machine.

## C. DISTRIBUTOR'S OBLIGATIONS

(1) On each of January 12th, 2010, and August 31, 2010, DISTRIBUTOR shall pay to COMPANY a certification fee of seventy-five hundred dollars ($7500.00) to COMPANY. Upon receipt of the certification fee, COMPANY shall send a technician to inspect COMPANY vending machines at locations operated by DISTRIBUTOR in the Exclusive Territory and to re-certify that such machines are operating in compliance with this Agreement. If the actual travel, employee and repair costs for such re-inspections exceed the certification fee, DISTRIBUTOR shall pay the additional costs to COMPANY within thirty (30) days after receipt of a statement and documentation of such excess costs from COMPANY.

(2) DISTRIBUTOR shall pay to COMPANY four percent (4.5%) of its gross receipts from each of COMPANY'S vending machines that were operated by DISTRIBUTOR in the Exclusive Territory prior to the date of this Agreement and from each of COMPANY'S vending machines acquired and operated during the Term of this Agreement. It is the intent of the parties that DISTRIBUTOR shall purchase and operate phoneUS® machines vending only pre-paid long distance telephone cards as collector cards. However, in the event that DISTRIBUTOR opts to convert any machines delivered hereunder to distribute

3

other types of collector cards, DISTRIBUTOR shall pay COMPANY'S costs for the conversion, including labor. The conversion shall take place at COMPANY'S facility located in Shelbyville, Tennessee, and transporting the machines to and from such facility for conversion shall be at DISTRIBUTOR'S expense. DISTRIBUTOR shall account to COMPANY and shall pay COMPANY'S percentage of the gross receipts from each machine on a weekly basis. COMPANY shall have the right to inspect DISTRIBUTOR'S books and records with respect to such gross receipts upon reasonable notice and during ordinary business hours.

As an incentive to the DISTRIBUTOR to keep all systems and accounts current and in compliance with the ADA, COMPANY may collect at its sole discretion an additional 1/2% for a total of 5% for failure to meet any provision of the ADA. This additional fee may be collected at any time during the term of the ADA.

(3) DISTRIBUTOR shall at all times faithfully, honestly, and diligently perform DISTRIBUTOR'S obligations hereunder and shall continuously exert its best efforts to promote and enhance the development of the COMPANY'S vending machines in accordance with the requirements set forth in Exhibit B ("Minimum Distribution Quota"). If DISTRIBUTOR fails at any time to meet the schedule of the Minimum Distribution Quota, the COMPANY shall have the right to terminate this Agreement by delivering a notice to DISTRIBUTOR stating that the COMPANY elects to terminate this Agreement as a result of such failure. Such termination shall be effective upon delivery of such notice of termination.

(4) DISTRIBUTOR acknowledges that it has been provided with a copy of the COMPANY'S Rules and Regulations for the operation of the COMPANY'S vending machines and any associated promotional play games. DISTRIBUTOR shall provide a copy of these Rules and Regulations to all purchasers or licensees of the COMPANY'S vending machines. DISTRIBUTOR shall make periodic random checks, not less than once per month, at all locations within the Exclusive Area to insure that the vending machines are operated in accordance with the COMPANY'S Rules and Regulations. If the COMPANY discovers at any time that one or more vending machines within the Exclusive Area are being operated in any matter other than in strict compliance with the Rules and Regulations, then the COMPANY shall provide DISTRIBUTOR immediate written notice of the location at which the vending machines are out of compliance, together with a description of the steps needed to bring the operation of the vending machines in compliance with the Rules and Regulations. Upon DISTRIBUTOR'S receipt of such notice, the DISTRIBUTOR shall have forty-eight (48) hours to cure the noncompliance. If the noncompliance is not cured within forty-eight (48) hours, COMPANY shall have the right to terminate this Agreement and said equipment will become property of COMPANY. Such termination shall be effective upon delivery of notice of termination.

(5) DISTRIBUTOR shall keep attached to the COMPANY'S vending machines all identifying serial numbers, name plates, or DISTRIBUTOR numbers associated in the production, sale, and identification of the machines.

4

(6) DISTRIBUTOR shall not modify the game rules or the mechanical/electronic aspects of any of the COMPANY'S vending machines.  DISTRIBUTOR shall not remove or alter the artwork or trade dress of any COMPANY vending machine in any way.

(7) DISTRIBUTOR shall operate the COMPANY'S vending machines in only in accordance with the designed method of a card dispensing/promotional game. And will adopt, implement and bear additional cost associated with doing so.

(8) Except as may be otherwise agreed in writing by COMPANY, in operating the COMPANY'S vending machines, DISTRIBUTOR shall (a) use only collector cards, phone card in any form sold by COMPANY; and (b) use only phone time sold by Company.

(9) DISTRIBUTOR acknowledges that in order to preserve and enhance the reputation and goodwill of the COMPANY and the goodwill of the Marks, all of the COMPANY'S vending machines must be properly developed and operated.  Accordingly, DISTRIBUTOR agrees that the COMPANY must approve all proposed vending machine locations in advance and may refuse to grant to DISTRIBUTOR the right to operate, sell or license vending machines at a particular location within the Exclusive Area.  DISTRIBUTOR shall submit to the COMPANY a complete site report containing such demographic, commercial, and other information and photographs as the COMPANY may reasonably require, including a copy of an executed agreement pertaining to the sale, license, or placement of vending machines at the proposed location, but made expressly contingent upon the COMPANY'S approval of the site.

(10) DISTRIBUTOR shall indemnify, defend and hold harmless the COMPANY and its affiliates, and their respective officers, directors, employees and agents, from any and all claims, demands, liabilities, and all costs and expenses (including, without limitation, reasonable attorneys' fees) arising from any failure by DISTRIBUTOR to comply with the terms and obligations of this Agreement.

## D. EXCLUSIVE AREA CONFLICTS

(1) Any continued operation of a COMPANY vending machine within the Exclusive Area by the COMPANY or a purchaser or licensee of a vending machine which vending machine was purchased or licensed on or before the date of this Agreement shall not be considered to constitute a violation of this Agreement.

(2) The rights granted DISTRIBUTOR herein are subject to any prior territorial rights of other DISTRIBUTORS which may now exist in the Exclusive Area, whether or not currently being enforced.  In the event of a conflict in territorial rights, whether under distribution agreements or separate territorial or distribution agreements, the earlier in time shall prevail, DISTRIBUTOR'S rights under this Agreement shall terminate upon notice from the COMPANY to this effect, and, upon execution of a termination and release agreement in form and scope satisfactory to the COMPANY, all fees paid hereunder by DISTRIBUTOR shall be refunded except to the extent of any debt to the COMPANY which DISTRIBUTOR has otherwise incurred and not paid.  DISTRIBUTOR shall be free to negotiate with any person, corporation, or other entity, which claims territorial rights adverse to the rights

5

granted under this Agreement, for the assignment of those prior territorial rights. For this purpose, the COMPANY agrees to approve any such assignment not in conflict with any other agreements involving the COMPANY provided the assignor and assignee satisfy all past due and current debts to the COMPANY and are otherwise in compliance with all terms and provisions of any and all agreements between each of them and the COMPANY.

(3) In the event of claims adverse to DISTRIBUTOR'S right to distribute vending machines in the Exclusive Area, it is the responsibility of the COMPANY to protect and maintain DISTRIBUTOR'S rights hereunder. However, if it appears to the COMPANY, in its sole discretion, that protection of the Exclusive Area by legal action is not advisable, whether due to the anticipation of or actual protracted nature of the action, the costs involved, the uncertainty of outcome, or otherwise, the COMPANY has the right to terminate this Agreement provided the COMPANY executes a termination and release agreement in form and scope satisfactory to it, tenders such agreement to DISTRIBUTOR, and, upon DISTRIBUTOR'S execution thereof, refunds all fees to DISTRIBUTOR except to the extent of any debt to the COMPANY which DISTRIBUTOR has otherwise incurred and not paid.

## 4. DISTRIBUTION FEE

Concurrently with the execution of this Agreement, DISTRIBUTOR shall pay to the COMPANY the fee set forth in Exhibit B as a non-refundable Distribution Fee, which shall be deemed fully earned by the COMPANY upon execution of this Agreement. In the event the FEE is payable over a period of time any balance of Fee that may be outstanding should this agreement be terminated by either party remains due and payable to COMPANY.

## 5. CONFIDENTIAL INFORMATION

The COMPANY possesses certain confidential information and trade secrets, including the methods, techniques, format, specifications, procedures, information, systems and knowledge of and experience in the manufacture, repair and operation of the COMPANY'S vending machines (the "Confidential Information"). The COMPANY may from time to time disclose the Confidential Information to DISTRIBUTOR in providing guidance and assistance to DISTRIBUTOR pursuant to this Agreement.

DISTRIBUTOR acknowledges and agrees that DISTRIBUTOR will not acquire any interest in the Confidential Information, other than the right to utilize it in the distribution, repair, and operation of vending machines pursuant to this Agreement, and that the use or duplication of the Confidential Information in any other business would constitute an unfair method of competition. DISTRIBUTOR acknowledges and agrees that the Confidential Information is proprietary and will be disclosed to DISTRIBUTOR solely on the condition that DISTRIBUTOR agrees, and DISTRIBUTOR does hereby agree, that DISTRIBUTOR (1) will not use the Confidential Information in any other business or capacity; (2) will maintain the absolute confidentiality of the Confidential Information during and after the term of this Agreement; (3) will not make unauthorized copies of any portion of the Confidential Information disclosed in written form; (4) will adopt and

6

implement all reasonable procedures prescribed from time to time by the COMPANY to prevent unauthorized use or disclosure of the Confidential Information, including without limitation, restrictions on disclosure thereof to employees of DISTRIBUTOR and the use of nondisclosure and non-competition clauses in employment agreements with such persons; and (5) will not disclose the Confidential Information to limited partners or investors in DISTRIBUTOR (in the event this Agreement is assigned to a partnership or corporation), except to the extent certain financial reporting may be required by applicable partnership or securities laws.  Notwithstanding anything to the contrary contained in this Agreement, and provided DISTRIBUTOR shall have obtained the COMPANY'S prior written consent, which consent shall not be unreasonably withheld, the restrictions on DISTRIBUTOR'S disclosure and use of the Confidential Information shall not apply to disclosure of Confidential Information in judicial or administrative proceedings to the extent DISTRIBUTOR'S best efforts, and shall have afforded the COMPANY the opportunity to obtain an appropriate protective order or other assurance satisfactory to the COMPANY of confidential treatment for the information required to be so disclosed.

DISTRIBUTOR shall fully and promptly disclose to the COMPANY, all ideas, concepts, methods and techniques relating to the development and/or operation of collector card vending machines conceived or developed by DISTRIBUTOR and/or DISTRIBUTOR'S employees during the term of this Agreement.  DISTRIBUTOR agrees that the COMPANY shall have the perpetual right to use and authorize other distributors to use such ideas, concepts, methods and techniques and, if incorporated into the COMPANY'S system for the development and/or operation of the vending machines, such ideas, concepts, methods and techniques will become the sole and exclusive property of the COMPANY without any further consideration to DISTRIBUTOR.

## 6. COPYRIGHTS AND PATENTS

DISTRIBUTOR acknowledges that the COMPANY owns rights in certain copyrights and patents related to vending machines and collector cards, including rights under U.S. Patent No.'s 6,213,874 and 6,722,997.  DISTRIBUTOR acknowledges and agrees that DISTRIBUTOR will not acquire any ownership interest in rights owned by COMPANY in any copyrights and patents and that the use of same in any other business or manner not expressly authorized by this Agreement is prohibited. DISTRIBUTOR will adopt and implement all reasonable procedures prescribed from time to time by the COMPANY to prevent unauthorized use of the COMPANY'S rights in copyrights and patents.

## 7. MARKS

DISTRIBUTOR acknowledges that DISTRIBUTOR has no ownership interest of any kind in or to the Marks and that DISTRIBUTOR'S right to use the Marks is derived solely from this Agreement.  All usage of the Marks by DISTRIBUTOR and any goodwill established thereby shall inure to the exclusive benefit of the COMPANY.  After the termination or expiration of this Agreement, DISTRIBUTOR shall not, directly or indirectly, at any time use in any manner or for any purpose any MARK or any colorable imitation thereof.

DISTRIBUTOR shall not use any MARK as part of any corporate or trade name or with any prefix, suffix, or other modifying words, terms, designs, or symbols, or in any modified form, nor may DISTRIBUTOR use any MARK in connection with any business or activity, other than the

business conducted by DISTRIBUTOR pursuant to this Agreement, unless such use is explicitly authorized in writing by the COMPANY.

DISTRIBUTOR shall immediately notify the COMPANY in writing of any apparent infringement of or challenge to DISTRIBUTOR'S use of any MARK, or claim by any person of any rights in any MARK or similar trade name, trademark, service mark of which DISTRIBUTOR becomes aware. DISTRIBUTOR shall not communicate with any person other than the COMPANY and its counsel in connection with any such infringement, challenge or claim. The COMPANY shall have sole discretion to take such action as it deems appropriate and the right to exclusively control any litigation, U.S. Patent and Trademark Office proceeding or other administrative proceeding arising out of any such infringement, challenge, or claim or otherwise relating to any MARK.

## 8. MANAGEMENT OF BUSINESS

DISTRIBUTOR shall exert its best efforts to perform DISTRIBUTOR'S obligations hereunder and shall not engage in any other business or other activity, directly or indirectly, that may conflict with DISTRIBUTOR'S obligations hereunder. DISTRIBUTOR will not operate, or allow to operate, at any location any device that would be deemed inappropriate by COMPANY.

## 9. TERMINATION

### A. BY COMPANY

In addition to the COMPANY'S right to terminate under Paragraph C of Section 3 hereof, the COMPANY shall have the right to terminate this Agreement by delivering a notice to DISTRIBUTOR stating that the COMPANY elects to terminate this Agreement as a result of any of the defaults set forth below. Such termination shall be effective upon delivery of such notice of termination or, if applicable, upon failure to cure (to the COMPANY'S satisfaction) any such default by the expiration of any period of time within which such default may be cured in accordance with the provisions set forth below. It shall be a material default and breach of this Agreement if:

(a) DISTRIBUTOR attempts to make an unauthorized assignment or transfer of this Agreement or there is a change in ownership interest in DISTRIBUTOR;

(b) Subsequent to an assignment to a corporation or partnership, which has been approved by the COMPANY in writing in the COMPANY'S prescribed assignment form, the "control person" designated therein (i) voluntarily or involuntarily relinquishes such position without the COMPANY'S prior written approval or (ii) fails to perform in the duties and obligations of DISTRIBUTOR as set forth in this Agreement.

(c)    DISTRIBUTOR has (i) made any material misrepresentations or omission in DISTRIBUTOR'S application for the distribution rights conferred by this Agreement or is convicted of or pleads no contest to a felony or other crime or offense that may adversely affect the goodwill associated with the Marks or (ii) DISTRIBUTOR (or any employee, agent, or licensee thereof) conducts itself in a manner offensive to decency, morality, or

8

social proprieties, or becomes involved in any situation which degrades him and/or her in society or subjects either him and/or her, the COMPANY, or the operation of the vending machines to public disrepute, contempt or scandal;

(d) DISTRIBUTOR (i) makes any unauthorized use of the Marks or unauthorized use or disclosure of the Confidential Information or (ii) has failed to disclose to COMPANY prior to the date of this Agreement any prior disclosure by DISTRIBUTOR of Confidential Information in violation of any prior agreement;

(e) DISTRIBUTOR fails to comply with any other provision of this Agreement;

(f) DISTRIBUTOR fails on three (3) or more separate occasions within any twelve (12) consecutive month period, or on six (6) separate occasions cumulatively during the term of this Agreement, to comply with this Agreement, whether or not such failures to comply are corrected after notice thereof is delivered to DISTRIBUTOR; or

(g) DISTRIBUTOR violates any covenant, term, or condition of any note or agreement (including any franchise or development agreement) between the COMPANY (or an affiliate) and DISTRIBUTOR, the effect of which is to allow the COMPANY (or any affiliate) to accelerate the maturity of or to terminate such note or agreement before its stated maturity or termination date.

DISTRIBUTOR shall have the right to cure a breach under Paragraphs (c)(ii) and (e) within thirty (30) days after delivery of the COMPANY'S notice of termination.

B. BY DISTRIBUTOR

DISTRIBUTOR may terminate this Agreement if vending machines ordered by DISTRIBUTOR are not made available for pick-up by DISTRIBUTOR within forty-five (45) days after payment is received by COMPANY.

## 10. EFFECT OF TERMINATION AND EXPIRATION

### A. CONTINUING OBLIGATIONS

All obligations of the COMPANY and DISTRIBUTOR under this Agreement which expressly or by their nature survive the expiration or termination of this Agreement shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement and until they are satisfied in full or by their nature expire.

### B. COVENANT NOT TO COMPETE

Upon termination or expiration of this Agreement, DISTRIBUTOR agrees that for a period of five (5) years, commencing on the effective date of expiration or termination of this Agreement, DISTRIBUTOR shall not have any interest as an owner, partner, director, officer, employee, consultant, representative or agent, or in any other capacity, in any manufacturer or distributor of collector card vending machines or any style of electronic or other interactive sweepstakes located or operating within or out side any exclusive territory in which COMPANY has granted a distributorship.

### C. RETURN OF INTELLECTUAL PROPERTY

Upon termination or expiration of this AGREEMENT, DISTRIBUTOR shall return to COMPANY: (1) all copies of any documents and any machine parts incorporating any of the COMPANY'S confidential information or trade secrets; (2) all materials and machine parts that display any of the Marks; and (c) any part of any machine which is covered by any copyright or patent owned by or licensed to COMPANY.

DISTRIBUTOR acknowledges the entire version of DISTRBUTORS systems are covered by one or more of the patents owned or controlled by COMPANY.

## 11. ASSIGNMENT

### A. BY COMPANY

This agreement is fully assignable by the COMPANY and such assignment shall inure to the benefit of any assignee or other legal successor to the interests of the COMPANY herein.

### B. BY DISTRIBUTOR

DISTRIBUTOR understands and acknowledges that the rights and duties created by this Agreement are personal to DISTRIBUTOR and that the COMPANY has entered into this Agreement in reliance upon the individual or collective character, skill, aptitude, attitude, business ability, and financial capacity of DISTRIBUTOR. Therefore, neither this Agreement (or any interest therein), nor any part or all of the ownership of DISTRIBUTOR may be voluntarily, involuntarily, directly or indirectly, consolidation or merger, by issuance of securities representing an ownership interest as a general partner of a limited partnership, by transfer of an interest in DISTRIBUTOR or in this Agreement in a divorce proceeding, or in the event of the death of DISTRIBUTOR or an owner of DISTRIBUTOR, by will, declaration of or transfer in trust or the laws of interstate succession), without the prior written approval of the COMPANY. Any such assignment or transfer without such approval shall constitute a breach hereof and shall convey no rights to or interests in this Agreement to such assignee.

If ownership of DISTRIBUTOR changes during the Term of this Agreement to a new owner acceptable to and approved by COMPANY, this Agreement shall remain in full force and effect if prior to such change in ownership, DISTRIBUTOR pays to COMPANY a transfer fee of a minimum of One Hundred fifty-thousand dollars ($150,000.00) or if warranted in the COMPANY'S sole discretion a higher fee determined by the COMPANY.

## C. PUBLIC OR PRIVATE OFFERINGS

In the event DISTRIBUTOR shall, subject to the restrictions and conditions of transfer contained in Paragraph B of Section 11 of this Agreement, attempt to raise or secure funds by the sale of securities (including, without limitation, common or preferred stock, bonds, debentures or general or limited partnership interests) in DISTRIBUTOR or any affiliate of DISTRIBUTOR, DISTRIBUTOR shall provide written information about COMPANY to the COMPANY prior to its inclusion in any registration statement, prospectus or similar offering circular or memorandum. No information respecting the COMPANY or any of its affiliates shall be included in any securities disclosure document, unless such information has been furnished by the COMPANY, in writing, pursuant to the written request of the DISTRIBUTOR, in which the DISTRIBUTOR states the specific purposes for which the information is to be used. Should the COMPANY, in its sole discretion, object to any reference to the COMPANY or any of its affiliates or to any of their licensees in such offering literature or prospectus, such literature or prospectus shall not be used unless and until the objections of the COMPANY are withdrawn. The COMPANY assumes no responsibility for the offering whatsoever.

The prospectus or other literature utilized in any such offering shall contain the following language in bold-face type on the first textual page thereof:

**NEITHER WORLDS OF GAMES, LLC NOR ANY OF ITS AFFILIATES IS DIRECTLY OR INDIRECTLY THE ISSUER OF THE SECURITIES OFFERED HEREBY. NEITHER WORLDS OF GAMES, LLC NOR ANY OF ITS AFFILIATES ASSUMES ANY RESPONSIBILITY WITH RESPECT TO THIS OFFERING AND/OR ADEQUACY OR ACCURACY OF THE INFORMATION SET FORTH HEREIN, INCLUDING ANY STATEMENTS MADE WITH RESPECT TO ANY OF THEM. NEITHER WORLDS OF GAMES, LLC NOR ANY OF ITS AFFILIATES ENDORSES OR MAKES ANY RECOMMENDATION WITH RESPECT TO THE INVESTMENT CONTEMPLATED BY THIS OFFERING.**

DISTRIBUTOR shall indemnify, defend and hold harmless the COMPANY and its affiliates, and their respective officers, directors, employees and agents, from any and all claims, demands, liabilities, and all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in the defense of such claims, demands or liabilities, arising from the offer or sale of such securities, whether asserted by a purchaser or any such security or by a governmental agency. The COMPANY shall have the right (but not the obligation) to defend any such claims, demands or liabilities and/or participate in the defense of any action to which the COMPANY or any of its affiliates or any of their respective officers, directors, employees or agents is named as a party.

## 12. ENFORCEMENT

### A. SEVERABILITY AND SUBSTITUTION OF VALID PROVISIONS

To the extent that Paragraph B of Section 10 is deemed unenforceable by virtue of its scope in terms of area, business activity prohibited, or length of time, but may be made enforceable by reductions of any or all thereof, DISTRIBUTOR and the COMPANY agree that

same shall be enforced to the fullest extent permissible under the laws and public policies applied in the jurisdiction in which enforcement is sought.

If any applicable and binding law or rule of any jurisdiction requires a greater prior notice of the termination of or non-renewal of this Agreement than is required hereunder, or the taking of some other action not required hereunder, or if under any applicable and binding law or rule of any jurisdiction, any provision of this Agreement or any specification, standard or operating procedure prescribed by the COMPANY is invalid or unenforceable, the prior notice and/or other action required by such law or rule shall be substituted for the comparable provisions hereof, and the COMPANY shall have the right, in its sole discretion, to modify such invalid or unenforceable provision, specification, standard or operating procedure to the extent required to be valid and enforceable. DISTRIBUTOR agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision hereof, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof, or any specification, standard or operating procedure prescribed by the COMPANY, any portion or portions which a court may hold to be unenforceable in a final decision to which the COMPANY is a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order. Such modifications to this Agreement shall be effective only in such jurisdiction, unless the COMPANY elects to give them greater applicability, and this Agreement shall be enforced as originally made and entered into in all other jurisdictions.

## B. WAIVER OF OBLIGATIONS

The COMPANY and DISTRIBUTOR may be written instrument unilaterally waive or reduce any obligation of or restriction upon the other under this Agreement, effective upon delivery of written notice thereof to the other or such other effective date stated in the notice of the waiver. Whenever this Agreement requires the COMPANY'S prior approval or consent, DISTRIBUTOR shall make a timely written request thereof, and such approval, shall be obtained in writing.

The COMPANY makes no warranties or guarantees upon which DISTRIBUTOR may rely, and assumes no liability or obligation to DISTRIBUTOR, by granting any waiver, approval, or consent to DISTRIBUTOR, or by reason of any neglect, delay, or denial of any request thereof. Any waiver granted by the COMPANY shall be without prejudice to any other rights the COMPANY may have, will be subject to continuing review by the COMPANY, and may be revoked, in the COMPANY'S sole discretion, at any time and for any reason, effective upon delivery to DISTRIBUTOR of ten (10) days' prior written notice.

The COMPANY and DISTRIBUTOR shall not be deemed to have waived or impaired any right, power or option reserved by this Agreement (including, without limitation, the right to demand exact compliance with every term, condition and covenant herein, or to declare any breach thereof to be a default and to terminate this Agreement prior to the expiration of its term), by virtue of any custom or practice of the parties at variance with the terms hereof, any failure, refusal, or neglect of the COMPANY or DISTRIBUTOR to exercise any right under this Agreement or to insist upon exact compliance by the other with its obligations hereunder; or the acceptance by the COMPANY of any payment from DISTRIBUTOR after any breach of this Agreement.

Neither the COMPANY nor the DISTRIBUTOR shall be liable for loss or damage or deemed to be in breach of this Agreement if their respective failures to perform their obligations result from: (1) compliance with any law, ruling, order, regulation, requirement, or instruction of any federal, state, or municipal government or any department or agency thereof: (2) acts of God: (3) acts or omissions of the other party:  (4) strikes, embargoes, war, or riot; or (5) any other similar event or cause.  Any delay resulting from any of said causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable.

### C.  SPECIFIC PREFORMANCE/INJUNCTIVE RELIEF

Nothing in this Agreement shall bar the COMPANY'S right to obtain specific performance of the provisions of this Agreement and injunctive relief against threatened conduct that will cause it loss or damages, under customary equity rules, including applicable rules for obtaining restraining orders and preliminary injunctions.  DISTRIBUTOR agrees that the COMPANY may have such injunctive relief, without bond, but upon due notice, in addition to such further and other relief as may be available at equity or law.

### D.  RIGHTS OF PARTIES ARE CUMULATIVE

The rights of the COMPANY and DISTRIBUTOR hereunder are cumulative and no exercise or enforcement by the COMPANY or DISTRIBUTOR of any right or remedy hereunder shall preclude the exercise or enforcement by the COMPANY or DISTRIBUTOR of any other right or remedy hereunder or which the COMPANY or DISTRIBUTOR is entitled by law or equity to enforce.

### E.  GOVERNING LAW; WAIVER OF JURY TRIAL

To the extent not inconsistent with applicable law, this Agreement and the offer of sale of this Agreement shall be governed by the substantive laws (and expressly excluding the laws pertaining to choice of law) of the State of Tennessee.  Both the COMPANY and DISTRIBUTOR agree that neither shall be entitled to nor shall either demand a jury trial in the event of litigation.

### F.  EXCLUSIVE JURISDICTION

DISTRIBUTOR and the COMPANY agree that any action arising out of or relating to this Agreement (including, without limitation, the offer and sale of this Agreement) shall be instituted and maintained only in a state or federal court of general jurisdiction in Bedford County, Tennessee, and DISTRIBUTOR irrevocably submits to the jurisdiction of such court and waives any objection he may have to either the jurisdiction or venue of such court.

### G.  BINDING EFFECT

This Agreement is binding upon the parties hereto and their respective executors, administrators, heirs, assigns, and successors in interest, and shall not be modified except by written agreement signed by both DISTRIBUTOR and the COMPANY.

13

### H. CONSTRUCTION

The recitals to this Agreement and Exhibits A and B, hereto attached, are a part of this Agreement, which together constitute the entire agreement of the parties, and there are no other oral or written understandings or agreements between the COMPANY and DISTRIBUTOR relating to the subject matter of this Agreement.

All prior agreements between the parties, including without limitation any Area Distribution Agreements and test market agreements are hereby terminated except that all obligations (including payment obligations) of DISTRIBUTOR under any such agreements which expressly or by their nature survive the expiration or termination of any such agreement shall continue in full force and effect until they are satisfied in full or by their nature expire.

Except as otherwise expressly provided for herein, nothing in this Agreement is intended, nor shall be deemed, to confer any rights or remedies upon any person or legal entity not a party hereto.

The headings of the several sections and paragraphs hereof are for convenience only and do not define, limit or construe the contents of such sections or paragraphs.

The term "DISTRIBUTOR" as used herein is applicable to one or more persons, a corporation or a partnership, as the case may be, and the singular usage includes the plural and the masculine and neuter usages include the other and the feminine. If two or more persons are at any time DISTRIBUTOR hereunder, their obligations and liabilities to the COMPANY shall be joint and several. References to "DISTRIBUTOR" and "assignee" which are applicable to an individual or individuals shall mean the owner(s) of the equity or operating control of DISTRIBUTOR or the assignee, if DISTRIBUTOR or the assignee is a corporation or partnership.

This Agreement may be executed in multiple copies, each of which shall be deemed an original.

Time is of the essence in this Agreement.

### 13. INDEPENDENT CONTRACTORS/INDEMNIFICATION

The COMPANY and DISTRIBUTOR are independent contractors. Neither the COMPANY nor DISTRIBUTOR shall be obligated by or have any liability under any agreements, representations, or warranties made by the other that are not expressly authorized hereunder, nor shall the COMPANY be obligated for any damages to any person or property directly or indirectly arising out of the operation of the DISTRIBUTOR'S negligent or willful action of failure to act. The COMPANY shall have no liability for any sales, use, excise, income, gross receipts, property, or other taxes levied upon DISTRIBUTOR or its assets or upon the COMPANY in connection with the business conducted by DISTRIBUTOR, or any payments made by DISTRIBUTOR to the COMPANY pursuant to this Agreement or any Franchise Agreement. DISTRIBUTOR agrees to indemnify the COMPANY and its subsidiaries, affiliates, stockholders, directors, officers,

14

employees, agents and assignees against and to reimburse them for all such obligations, damages, and taxes for which they are held liable and for all costs reasonably incurred by them in the defense of any such claim brought against them or in any action in which they are named as a party, including without limitation reasonable attorneys' and expert witness fees, cost of investigation and proof of facts, court costs, other litigation expenses, and travel and living expenses. The COMPANY shall have the right to defend any such claim against it. The indemnities and assumptions of liabilities and obligations herein shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

## 14. NOTICES AND PAYMENTS

All written notices and reports permitted or required to be delivered by the provisions of this Agreement shall be deemed so delivered at the time if delivered by hand, one (1) business day after sending by facsimile or electronic mail, or three (3) business days after placed in the U.S. mail by Registered or Certified Mail, Return Receipt Requested, postage prepaid and addressed to the party to be notified at its most current principal business address of which the notifying party has been notified.

COMPANY shall communicate all notices regarding breach or lack of compliance with this Agreement by DISTRIBUTOR to the Control Person, with a copy of such notice also delivered to Perry Chappell.

IN WITNESS WHEREOF the parties hereto have executed, sealed, and delivered this Agreement in two counterparts on the day and year first above written.

Highway Games LLC,

By: _____
    Gary Bird Coleman Sr.

    _____
    Title

PHONEUS LLC,

By: _____
    D. Keith Heflin
    CEO

15

BEDFORD CO. CHANCERY CT.

2010 NOV 12  PM 2: 47

CURT M. COBB, CLERM

BY: _Cynthia Wilson_

**EXHIBIT A**

to

**AREA DISTRIBUTION AGREEMENT BETWEEN PHONEUS, LLC AND
HIGHWAY GAMES, LLC. DATED April 30th, 2009**

Exclusive Area: All counties within the Commonwealth of Virginia with the exception of territories in Wythe County, Bedford, Smyth, Pulaski, Montgomery, Carroll and any bordering counties in Virginia.

State of Tennessee, Bedford County
I certify this is a true copy of the
original _Exhibit A_
filed in the case.
This _11-12-10_
Curt M. Cobb, Clerk & Master

Highway Games LLC

By: _____
(Gary Bird Coleman Sr.)

_President_
Title

PHONEUS, LLC

By: _____
D. Keith Heflin
CEO

16

## EXHIBIT B

to

## AREA DISTRIBUTION AGREEMENT BETWEEN HIGWAY GAMES, LLC AND PHONEUS LLC. DATED April 30th, 2009

CONTROL PERSON: Gary B. Coleman Sr.

INITIAL TERM:

    Commencement Date:  April 30, 2009

    Expiration Date:     April 30, 2011

BEDFORD CO. CHANCERY CT.

2010 NOV 12  PH 2: 47

CURT M. COBB, C.&M.

BY: *Cynthia Wilse*

MINIMUM DISTRIBUTION QUOTA: 100 new machines per year at the then current market price.

DISTRIBUTION FEE: (FIVE HUNDRED THOUSAND DOLLARS) $500.000 Dollars to be paid over two years per the following schedule. Should Company or Distributor terminate the ADA the full fee remains due and collectable.

  (Twenty Five Thousand) 25,000.00 to be paid upon signing with additional payments of (Twenty Five Thousand) 25,000 per month due on the 1st of each month beginning June 1st with final payment due on the 1st of December 2010.

HIGHWAY GAMES LLC / INC.

By: _____

    (Gary Bird Coleman Sr)

Title _____

State of Tennessee, Bedford County
I certify this is a true copy of the
original *Exhibit B*
filed in this case.
This *11-12-10*
Curt M. Cobb, Clerk & Master

PHONEUS, LLC

By: _____

    D. Keith Heflin
    CEO

17

### ADDENDUM 1 TO AREA DISTRIBUTIOIN AGREEMENT
#### BETWEEN phoneUS LLC and Highway Games LLC Dated April 30th, 2009

Distributor has requested and Company has agreed as an option to paying 4 and ½ percent of gross revenues. The company has the option of paying (One Million Dollars) $1,000,000.00 to Company with in the first six months of the ADA. Upon payment of lump sum Company will then reduce the gross percentage to the original 3% from the date of full payment of the optioned fee.

HIGHWAY GAMES LLC

By _____
Gary Bird Coleman Sr.


phoneUS® LLC

By _____
D. Keith Heflin
CEO

BEDFORD CO. CHANCERY CT.

2010 NOV 12  PM 2: 47

CURT M. COBB, CLERK

BY: Cynthia Wilson

State of Tennessee, Bedford County
I certify this is a true copy of the
original _Addendum 1_
filed in the case.
This __11-12-10__
Curt M. Cobb, Clerk & Master

18

CERTIFIED MAIL

7009 0960 0001 1532 7842

Business Services Division
**Tre Hargett, Secretary of State**

**State of Tennessee**
312 Rosa L. Parks Avenue, 6th Floor
Nashville, Tennessee 37243

HIGHWAY GAMES, LLC
R/A CORPORATION SERVICE CO
1201 HAYS ST
TALLAHASSEE, FL 32301-2525